# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL DEPPENBROOK, ED ANTHONSEN, JOHN E. ATKINSON, LEE BLANKENBICKER, MICHAEL E. BURCKURE, RALPH CANANZI, HARRY P. CARCASE, PAUL BRUCE CERATTI, FRANK CHRICO, E.J. CORBIN, DAVID CORY, ROGER COTTERMAN, ARTHUR BRUCE CRIBBS, WILLIAM EATON, FRANK R. FERRERI, TERRY FLUENT, JOHN W. FRITZ, JR., WILLIAM GIPSON, OLSAN W. GLOVER, RON GOSSARD, CLIFFORD J. HALLSTEAD, ROBERT HEATON, ROBERT C. HARRINGTON, WAYNE HOSCAR, JAMES MICHAEL HOWE, ROBERT H. HUSTON, CHARLES W. HUNTINGTON, RAYMOND A. KANE, KEITH A. KNOX, JACK E. LIBERT, JAMES M. MANNON, JOHN R. MCDANEL, WILLIAM L. MCDOWELL, ALBERT MOORE (a/k/a DENNY MOORE), DAVID W. NAMOLA, JAMES P. NESTASIE, FRANK RAY PARRISH, THOMAS R. PARRISH, JERRY W. POWERS, THOMAS M. PROCOVICH, RICHARD M. RIHELY, CARL ROSE, PAUL KANE, LEX HERBANIK, TONY BRIANCESCO, CHARLES MAHOSKY, STANLEY TURAK, ART EVENS, HOWARD D. SHULER, JR., ROBERT TAYLOR, JACK THOMAS, DENNIS THUMM, JOSEPH TRZCINSKI, WILLIAM J. VENEZIE, SR., EDWARD M. WALSH, and LOUIS A. YOUNG, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) 2:10cv134 ) **Electronic Filing** |
| PENSION BENEFIT GUARANTY CORPORATION, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

March 17, 2011

I. **INTRODUCTION**

Plaintiffs, fifty-six (56) members of the United Steelworkers of America (the "USWA" or the "Union") and former employees of Republic Technologies International, LLC ("RTI") initiated this action against Defendant, Pension Benefit Guaranty Corporation[1] ("PBGC"), regarding the recalculation of benefits under RTI's USWA Defined Pension Benefit Plan (the "Pension Plan"). PBGC has filed a motion to dismiss the action on several grounds under Rule 12(b) of the Federal Rules of Civil Procedure. Plaintiffs have responded and the motion is now before the Court.

II. **STATEMENT OF THE CASE**

On April 2, 2001, RTI filed a petition for voluntary bankruptcy under Chapter 11 of the United States Bankruptcy Code. On June 12, 2002, PBGC which assumed the responsibility to pay the retirement benefits of RTI employees as a result of RTI's bankruptcy[2], issued notices pursuant to 29 U.S.C. § 1342(c), indicating its intent to terminate the plans, to seek appointment as statutory trustee, and to have June 14, 2002, established as the date of plan termination. *Pension Benefit Guar. Corp. v. Republic Techs. Int'l, LLC*, 386 F.3d 659, 660 (6th Cir. Ohio

---

[1] PBGC is a federal corporation that was established by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1301-1461 ("ERISA") for the purpose of administering the single-employer pension plan termination insurance program. Under this insurance program, PBGC guarantees the payment of certain minimum pension benefits to pension plan participants in the event that a covered plan terminates with insufficient assets to pay the benefits in full. 29 U.S.C. §§ 1302(a)(2), 1322, and 1361.

[2] If a plan terminates with insufficient assets to pay guaranteed benefits, PBGC typically becomes trustee of the plan, takes over the assets and liabilities of the plan, and pays benefits to plan participants. 29 U.S.C. §§ 1322, 1342(d)(1), and 1361.

2004). On that same day, PBGC also filed a complaint against RTI in the United States District Court for the Northern District of Ohio seeking termination of the plans, appointment as statutory trustee, and the establishment of June 14, 2002, as the date of plan termination. *Id.*

The District Court, however, ruled that August 17, 2002 was the date of the termination of the plan, which resulted in significantly increased pension benefits that PBGC was required to pay from its insurance funds. In *Pension Benefit Guar. Corp. v. Republic Techs. Int'l, LLC*, the Court of Appeals for the Sixth Circuit reversed the District Court's order regarding the date of plan termination holding that June 14, 2002, was the correct date of plan termination. *See generally Pension Benefit Guar. Corp. v. Republic Techs. Int'l, LLC, supra.* PBGC then recalculated the participants' benefit entitlements resulting in reductions to the monthly benefits of the participants.

**III. DISCUSSION**

PBGC seeks dismissal of Plaintiffs' Amended Complaint contending that: (1) venue is improper in this district; (2) the Complaint was improperly served; and (3) the complaint fails to state a claim upon which relief can be granted.

A. <u>Venue</u>

PBGC argues that the ERISA claim should be dismissed because Plaintiffs brought this claim against PBGC in an improper venue. ERISA contains a specific venue provision applicable to actions against PBGC. Under 29 U.S.C. § 1303(f), a participant "may bring an action against [PBGC] for appropriate equitable relief in the appropriate court." 29 U.S.C. § 1303(f)(1). The "appropriate court" is defined as:

(A) the United States district court before which proceedings under section 1341 or 1342 of this title are being conducted,

(B) if no such proceedings are being conducted, the United States district court for the judicial district in which the plan has its principal office, or

(C) the United States District Court for the District of Columbia.

29 U.S.C.A. § 1303(f)(2). PBGC contends that because there are no current proceedings under §§ 1341 or 1342, and because the plan's principal office has closed, the statute compels venue in the District of Columbia. The Court agrees.

Presently, there are no proceeding being conducted under §§ 1341 or 1342 in this district. Moreover, PBGC's action under § 1342 was initiated in the United States District Court for the Northern District of Ohio, and culminated with the Sixth Circuit's decision in *Pension Benefit Guar. Corp. v. Republic Techs. Int'l, LLC, supra.*, in 2004. Because there are no such proceedings presently pending, subsection A of § 1303(f)(2) is inapplicable in this instance.

Absent proceedings being conducted under §§ 1341 or 1342, the Court must determine if the Pension Plan has a principal place of business in the Western District of Pennsylvania. The Pension Plan was terminated by the District Court of Northern Ohio in 2003, and PBGC was appointed statutory trustee of the Plan. When Plaintiffs initiated this action, the Pension Plan had no principal office in the Western District of Pennsylvania. Accordingly, the appropriate statutory venue for the instant litigation is the United States District Court for the District of Columbia. In the interests of justice, the Court will not dismiss the action, but will transfer the action to the United States District Court for District of Columbia.

B. <u>Improper Service</u>

PBGC seeks dismissal of the complaint for failure of Plaintiffs to conform to the service requirements of Rule 4 of the Federal Rules of Civil Procedure. Because PBGC is an agency of the United States, it must be served in accordance with Rule 4(i). Rule 4(i)(2) states in relevant part that "To serve a United States agency . . . a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency . . ." Fed. R. Civ. P 4(i)(2). In order to serve the United States, Plaintiffs must deliver a copy of the

4

summons and of the complaint to the United States attorney for the district where the action is brought and to the Attorney General of the United States in Washington, D.C. *See* Fed. R. Civ. P 4(i)(1)(A) & (B). PBGC acknowledges that it was mailed a copy of the complaint in this instance, but there is no indication in the record that Plaintiffs served the United States Attorney in Pittsburgh, or the Attorney General as required by Rule 4(i).

The United States Court of Appeals for the Third Circuit has held that "dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained." *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992). "Where service is insufficient, the Court must extend the deadline where good cause is present, and may, at its discretion, extend the deadline regardless, even if good cause is not present." *Salaam v. Merlin*, No. CIV.A.08-1248, 2009 U.S. Dist. LEXIS 64463 at *3 (D.N.J. Jul. 22, 2009) (citing *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1312 (3d Cir.1995)). Good cause exists where there is a "demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995). Some of the factors courts examine in determining whether good cause exists include: (1) the reasonableness of the plaintiffs' efforts to serve, (2) the prejudice that may befall a defendant as a consequence of untimely service, and (3) whether plaintiffs moved for an enlargement of time to serve. *Id.* (citing the three factors but noting that the "absence of prejudice alone can never constitute good cause to excuse late service").

The Court will allow the *pro se* Plaintiffs in this matter the opportunity to correct any service defects related to the service of the United States. Rule 4(i)(4) permits the Court to allow a party reasonable time to cure its failure to a certain party or parties under the Rule's requirement of multiple service. The Court finds the Plaintiffs made reasonable efforts to serve PBGC and its failure to serve the United States is excusable in this instance and causes no

5

prejudice to the United States or PBGC. Allowing the Plaintiffs to perfect service upon the United States comports with the 1993 Advisory Committee Notes to Rule 4(i) Amendments which recognize that the Rule, as amended, ". . . saves the plaintiff from the hazard of losing a substantive right because of failure to comply with the complex requirements of multiple service. . ." Accordingly, Plaintiffs may serve the United States Attorney for the District of Columbia and the Attorney General of the United States in compliance with the Federal Rules of Civil Procedure as specifically set forth in the Order following the filing of the Court's Opinion.

      C.      <u>Failure to Exhaust Administrative Remedies</u>

PBGC maintains that sixteen (16) of the Plaintiffs have not exhausted their administrative remedies and must do so before seeking judicial review. Although ERISA does not expressly require exhaustion of administrative remedies, "where Congress has not clearly required exhaustion, sound judicial discretion governs." *Boivin v. U.S. Airways, Inc.*, 446 F.3d 148, 153 (D.C. Cir. 2006)(quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). The Supreme Court has long "acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. at 144-145; *see also Myers v. Bethlehem Shipbldg. Corp.*, 303 U.S. 41, 50-51 (1938) (stating "the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted"). The Court further noted, with respect to agency authority, that "the exhaustion doctrine recognizes . . . that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." *McCarthy v. Madigan*, 503 U.S. at 145.

PBGC regulations provide administrative remedies for persons dissatisfied with its benefit determinations. The regulations require that PBGC issue an "initial determination" of a participant's benefits stating "the reason for the determination, and . . . shall contain notice of the right to request review of the determination." 29 C.F.R. § 4003.21. The regulations allow any

person "aggrieved" by the initial determination to file an appeal to the PBGC Appeals Board. 29 C.F.R. § 4003.51. The decision of the Appeals Board "constitutes the final agency action by the PBGC with respect to the determination which was the subject of the appeal." 29 C.F.R. § 4003.59(b). Further, the regulations state that "a person aggrieved by an initial determination . . . has not exhausted his or her administrative remedies until he or she has filed" a request for review. 29 C.F.R. § 4003.7.

Plaintiffs argue that they should be excused from exhausting administrative remedies because those Plaintiffs that did appeal were afforded no meaningful right to be heard on the issues so any appeal would be futile. The futility exception, however, is "quite restricted" and "has been applied only when resort to administrative remedies is clearly useless." *Boivin v. U.S. Airways, Inc.*, 446 F.3d at 157 (citations omitted). In order to fall within the exception, Plaintiffs "must show that it is certain that their claim will be denied on appeal, not merely that they doubt an appeal will result in a different decision." *Id.* They are unable to do so.

The Court, therefore, must dismiss, without prejudice, the claims of any Plaintiff herein who has failed to exhaust their administrative remedies. There is no evidence before the Court however with respect to which of the Plaintiffs PBGC contends failed to exhaust their administrative remedies. Nor does the Amended Complaint allege that the Plaintiffs have exhausted their administrative remedies with respect to their specific claims. The Court finds dismissal of the entire action is premature. This Court will allow Plaintiffs the opportunity to file a Second Amended Complaint in which they may allege whether they have exhausted the administrated remedies provided in the PBGC regulations.

Because Plaintiffs shall be given the opportunity to file an amended complaint, the Court will not address its final argument with regard to the failure to state a claim based upon Plaintiffs' alleged request for relief that is legal rather than equitable. Clearly, Plaintiffs have asked for injunctive and declaratory relief, however, their complaint can be construed as

requesting compensatory relief as well. PBGC can raise the issue subsequent to Plaintiffs filing of their Second Amended Complaint.

## IV. CONCLUSION

Based on the foregoing, PBGC's motion to dismiss shall be granted in part and denied in part without prejudice. The Court finds that the appropriate statutory venue for this litigation is the United States District Court for the District of Columbia, and, in the interests of justice, the Court will not dismiss the action, but will transfer the action to the District of Columbia. Plaintiffs shall file a Second Amended Complaint as specifically set forth in the Order that follows. Plaintiffs shall also be given the opportunity to properly serve such amended complaint upon the United States Attorney for the District of Columbia and the Attorney General of the United States in compliance with the Federal Rules of Civil Procedure. An appropriate Order follows.

s/ David Stewart Cercone<br>
David Stewart Cercone<br>
United States District Judge

cc: Pro Se Plaintiffs (see attached list)
   (*Via First Class Mail*)

   Nathaniel Rayle, Esquire
   Cynthia Reed Eddy, Esquire
   (*Via CM/ECF Electronic Mail*)